## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NVENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-05-148 EMD CCLD |
| | ) | |
| HORTONWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 24, 2016
Decided: February 1, 2017

*Upon Defendant Hortonworks, Inc.'s Partial Motion to Dismiss*
*Counts II, III, and IV of the Verified Complaint*
***GRANTED in part and DENIED in part***

Kurt M. Heyman, Esquire, Samuel T. Hirzel II, Esquire, Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, Neal A. Jacobs, Esquire, Richard E. Miller, Esquire, and Joshua A. Gelman, Esquire, Jacobs Law Group, Philadelphia, Pennsylvania. *Attorneys for NVent, LLC*

Jeremy D. Anderson, Esquire, Kelly A. Del Dotto, Esquire, Fish & Richardson P.C., Wilmington, Delaware, and Gus P. Coldebella, Esquire, Fish & Richardson P.C., Boston, Massachusetts. *Attorneys for Hortonworks, Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This breach of contract action is assigned to the Complex Commercial Litigation Division of the Court. On May 16, 2016, Plaintiff NVent, LLC ("NVent") filed its Verified Complaint (the "Complaint"). Through the Complaint, NVent seeks to hold Defendant Hortonworks, Inc. ("Hortonworks") accountable for Hortonworks' misrepresentations regarding referrals; Hortonworks' agreement to purchase a minority ownership interest in HVent; Hortonworks' agreement to purchase the assets of HVent; and, Hortonworks' wrongful and oppressive conduct in controlling management operations and decisions at HVent.

NVent presents four claims for relief in the Complaint. NVent asserts a claim for a declaratory judgment, contending that it is not in default under a Term Loan Agreement (the "Note") entered into between Hortonworks and NVent (Count I).[1] NVent alleges it has a "legitimate interest in the prompt resolution of the issue of whether Hortonworks' vague and false accusations are sufficient to establish that an 'Event of Default,' as set forth in the Note, has occurred because NVent will suffer damages if forced to comply with Hortonworks' unsubstantiated demands."[2] Second, NVent avers a claim for promissory estoppel (Count II).[3] NVent contends that Hortonworks made clear and unambiguous promises regarding the Note, and NVent relied upon those promises to enter the Note.[4] Third, NVent makes a misrepresentation claim (Count III).[5] Here, NVent claims that Hortonworks allegedly misrepresented that it would acquire NVent, and knew, or should have known, at the time of making the representations, that it would not be able to acquire NVent due to impediments.[6] Further, Hortonworks misrepresented that it had $40 million in work available for NVent.[7] Finally, NVent asserts a Lender Liability claim (Count IV).[8] NVent contends that Hortonworks acted in bad faith in securing the Note, and exercised greater-than-typical control over NVent as its lender.[9] Specifically, NVent alleges that Hortonworks controlled NVent's daily business operations and long-term management decisions, and forced NVent to terminate employees.[10]

On June 13, 2016, Hortonworks filed its Defendant Hortonworks, Inc.'s Opening Brief in Support of its Partial Motion to Dismiss Counts II, III, and IV of the Verified Complaint (the

---

[1] *See* Verified Complaint ¶¶ 73–78 (hereafter "Pl.'s. Compl.").
[2] *Id.* ¶ 76.
[3] *See id.* ¶¶ 78–88.
[4] *Id.* ¶¶ 79, 82.
[5] *See id.* ¶¶ 89–97.
[6] *Id.* ¶¶ 90–91.
[7] *Id.* ¶ 93.
[8] *See id.* ¶¶ 98–110.
[9] *Id.* ¶ 100.
[10] *Id.* ¶¶ 101–103.

"Motion"). Hortonworks also filed its answer and counterclaims. NVent filed its Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss (the "Opposition") on July 15, 2016. Hortonworks filed its Defendant Hortonworks, Inc.'s Reply Brief in Support of its Motion to Dismiss Counts 2, 3, and 4 of the Verified Complaint (the "Reply") on August 1, 2016. The Court heard oral argument on October 24, 2016 on the Motion, the Opposition, and the Reply. At the end of the hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court will **DENY** the Motion as to Count II. The Court will **GRANT** the Motion as to Counts III and IV, dismissing these counts without prejudice to allow NVent an opportunity to amend these two counts within fifteen (15) days from the date of this Opinion.

## II. RELEVANT FACTS[11]

### A.    GENERAL BACKGROUND

Hortonworks is an analytics business, specifically using the Hadoop programming framework.[12] Sometime in 2014, Hortonworks sought to grow its business through an initial public offering due to a growing demand for Hadoop services.[13] So, Hortonworks sought out a start-up enterprise that had the expertise to develop a work force capable of doing Hadoop servicing work, with an eye towards absorbing the start-up down the road.[14] NVent contends it was that enterprise.

---

[11] Unless otherwise indicated, the following are the Relevant Facts as alleged in the Complaint. For purposes of the Motion, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to NVent. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136 JRS, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[12] Pl.'s Compl. ¶ 7.
[13] *Id.* ¶¶ 8–9.
[14] *Id.* ¶¶ 10–11.

3

Hortonworks began talks with NVent in the fall of 2014.[15] Hortonworks proposed that it would invest $2.5 million in NVent in exchange for a 19.9% equity ownership in NVent.[16] Further, Hortonworks promised to provide NVent with approximately $40 million in servicing work.[17] Hortonworks also represented that it would assist NVent secure an additional $2.5 million investment in order for NVent to hire and train consultants to meet Hortonworks' servicing demands.[18] Hortonworks executed a Memorandum of Terms ("Memorandum") reflecting the investment.[19] The Memorandum provided that Hortonworks intended to invest $2.5 million by way of a note to be fixed at 5% interest, which could not be prepaid, and which would ultimately be converted to a 19.9% equity ownership in NVent.[20]

Hortonworks allegedly reneged on the Memorandum's terms, purportedly because "Hortonworks claimed it could not directly acquire an ownership interest in NVent because such an acquisition would negatively impact Hortonworks' valuation for its upcoming IPO."[21] Although the Memorandum was signed, NVent contends that Hortonworks' actions in connection with the Memorandum foreshadowed Hortonworks' future behavior: Hortonworks would lend NVent money, on Hortonworks' terms, for the purported purpose of assisting NVent to gear up and meet Hortonworks' servicing needs, and with the aim to acquire, in whole or in part, NVent.[22]

---

[15] *Id.* ¶ 12.
[16] *Id.* ¶¶ 14-15.
[17] *Id.* ¶ 16.
[18] *Id.* ¶¶ 17–18.
[19] *Id.* ¶ 19.
[20] *Id.* ¶ 20. The Memorandum, attached at Exhibit A to Plaintiff's complaint, is not signed by NVent, LLC. Only Horton's signature is attached.
[21] Pl.'s Compl. ¶¶ 23–25.
[22] *Id.* ¶ 70.

4

Hortonworks and NVent continued business. On February 24, 2015, the parties entered into the Note.[23] Hortonworks provided NVent an unsecured $2.5 million loan, at a fixed 4%, which was not subject to repayment until February 23, 2018.[24] NVent alleges Hortonworks required NVent to accept the Note as a precondition to Hortonworks' sending the promised $40 million business to NVent.[25] NVent relied on this promise, and accepted the loan.[26]

NVent alleges Hortonworks used the Note to exert control over NVent's operations and management to set up its potential acquisition.[27] Hortonworks directly controlled who NVent hired, how the employees were trained, and what work they performed; regularly monitored NVent's financial performance; and exerted control over NVent's management and marketing efforts.[28] NVent contends that, even with this oversight, Hortonworks failed to provide the repeatedly-promised work.[29] For example, Hortonworks provided only 1/10 of the promised work in the first year of the parties' relationship.[30] Hortonworks also allegedly ignored NVent's concerns about a lack of business.[31] In NVent's view, Hortonworks would have had no reason to lend money to NVent unless it was specifically for the purpose of providing services to Hortonworks' clients.

The parties' disagreement seemingly escalated in November 2015 when NVent's principals began complaining about the lack of promised work.[32] Will Lowry, an NVent principal, questioned Hortonworks' CEO directly.[33] In response, Hortonworks' CEO demanded

---

[23] Id. ¶¶ 27–28.
[24] Id. ¶ 29.
[25] Id.
[26] Id. ¶ 31.
[27] Id. ¶ 32.
[28] Id. ¶¶ 33–36.
[29] Id. ¶ 36.
[30] Id. ¶ 37.
[31] Id. ¶ 38.
[32] Id. ¶¶ 39–40.
[33] Id.

NVent terminate Mr. Lowry, and instructed Hortonworks' sales staff to disengage with NVent until NVent fired Mr. Lowry.[34] If NVent terminated Mr. Lowry, Hortonworks would follow through with its promise to acquire NVent.[35] So, NVent terminated Mr. Lowry.[36] Hortonworks then promised to acquire NVent by Christmas 2015.[37]

On or about November 6, 2015, Hortonworks' CEO emailed NVent, stating:

> Let's find a way to get you and your team over to hwks asap and put all this behind us...the hwks team highly values your technical domain and customer skills and strategic vision...let's put you rob and your key guys on this team and build a great company!!![38]

On November 8, 2015, Hortonworks' CEO asked for NVent's "most current and up to date financials as well as a current cap table," which NVent provided.[39] On November 19, 2015, Horton "reach[ed] out to [NVent] to get the ball rolling on financial diligence in anticipation of some sort of acquisition between Hortonworks and NVent."[40] Hortonworks orally proposed to hire all of NVent's employees and assets, and convert the Note to equity, as long as NVent paid the difference between NVent's assets and the Note's outstanding amount.[41] NVent orally accepted the deal, and began doing its due diligence.[42] Hortonworks then delayed the acquisition due to a purported secondary stock offering.[43] Nonetheless, Hortonworks instructed NVent to terminate certain employees, which NVent did.[44] Thereafter, Hortonworks refused to move forward with the acquisition or send additional work to NVent.[45] By April 2016, one of NVent's

---

[34] *Id.* ¶¶ 41–42.
[35] *Id.* ¶¶ 43–44.
[36] *Id.* ¶ 44.
[37] *Id.* ¶ 45.
[38] *Id.* ¶ 46 (typos and grammar in original).
[39] *Id.* ¶ 47.
[40] *Id.* ¶ 48.
[41] *Id.* ¶ 49.
[42] *Id.* ¶ 50.
[43] *Id.* ¶ 51.
[44] *Id.* ¶¶ 52–53.
[45] *Id.* ¶¶ 54–55.

two remaining principals terminated his relationship with NVent due to Hortonworks' failure to perform as promised.[46]

On April 15, 2016, Hortonworks sent a letter to NVent alleging NVent breached the Note.[47] The Demand letter accused NVent of committing intentional and incurable breaches under the express terms of the Note, which allegedly rendered NVent in default because: (a) Hortonworks "has reason to believe that NVent is in breach of its obligations under the [Vendor Services Agreement]";[48] and (b) NVent has breached its obligations under Section 4(g) of" the Note by engaging in business not reasonably related to the NVent's business.[49]

## B.    CONTRACT PROVISIONS

The Motion's arguments rely heavily on two documents: the parties' Vendor Services Agreement ("VSA") and the Note.[50]

### 1.    The VSA

NVent argues it did not sign the VSA. The VSA's preamble states: "This Vendor Services Agreement is made and entered into as of January 20, 2015 (the "Effective Date"), by and between Hortonworks, Inc., a Delaware corporation . . . and NVent, LLC, a Delaware corporation."[51] But, it was "accepted and agreed" to by NVent Solutions, LLC and signed by Will Lowry on January 20, 2014 (sic).[52] Clearly, the VSA states that it is an agreement between NVent (as the "Vendor" under the VSA) and Hortonworks.[53] However, NVent Solutions, LLC

---

[46] *Id.* ¶ 56.
[47] *Id.* ¶ 57.
[48] NVent alleges the VSA does not apply to NVent: non-party NVent Solutions, LLC, a different entity, executed it. *See discussion, infra.*
[49] Pl.'s Compl. ¶ 58.
[50] Attached to Pl.'s. Compl. as Exhibit D and B, respectively.
[51] Pl.'s Compl. Ex. D at 1.
[52] *Id.* at 5.
[53] *See id.*

is the corporate party executing the VSA.[54] At this stage of the proceedings – drawing all reasonable inferences in NVent's favor, the Court must accept that NVent never executed the VSA.

The VSA's purpose was for NVent to provide work to Hortonworks' other clients. Section 1.1 states:

> The parties may, from time to time, agree upon and execute statements of work in the form attached to this Agreement ("SOW"). SOWs will be numbered sequentially. On the terms and conditions set forth in this Agreement, [NVent] agrees to perform the services described in each executed SOW for [Hortonworks] and, as part of those Services, to provide the deliverables outlined in each SOW.[55]

The VSA also includes an integration clause, which states:

> This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between the parties. No modification of, or amendment to, this Agreement nor any waiver of any rights under this Agreement shall be effective unless in writing and signed by the party to be charged. The terms of this Agreement will govern all SOWs between the parties. In the event of any conflict between this Agreement and a SOW, the SOW shall control, but only with respect to the Services set forth therein.[56]

The VSA also contains a California choice of law provision.[57]

## 2. The Note

The Note states: "This [Note], dated as of February 24, 2015, is entered into by and between NVent, LLC, a Delaware limited liability company ("Borrower"), and Hortonworks, Inc., a Delaware corporation ("Lender").[58]

Further, the parties list several events of default, including:

---

[54] Delaware's Corporation Search shows that NVent, LLC (File number 5507493) and NVent Solutions, LLC (File Number 5507497) are distinct entities.
[55] Pl.'s Compl. Ex D at 1.
[56] *Id.* at 5.
[57] *Id.*
[58] Pl.'s Compl. Ex. B at 1.

d) Borrower fails or neglects to perform, keep, or observe the negative covenants contained in Paragraphs 4(g)[.][59]

\* \* \*

Upon the occurrence of an Event of Default, the indebtedness and other obligations of Borrower to Lender herein described shall, if Lender shall so elect, become immediately due and payable.[60]

Paragraph 4(g) provides "that Borrower will not engage in any business other than the businesses currently engaged in by Borrower or reasonably related thereto[.]"[61]

The parties' choice of law provision states: "This [Note] shall be governed and construed in accordance with the laws of the State of California."[62]

Finally, the parties included an integration clause:

This [Note] and the other documents described or contemplated herein represent the final agreement between the parties, embody the entire agreement and understanding between the parties hereto and thereto, supercede (sic) all prior agreements and understandings relating to the subject matter hereof and thereof and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreement (sic) between the parties. This [Note] may only be amended in writing executed by both parties hereto.[63]

## III. LEGAL STANDARD

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to

---

[59] *Id.* at 5.
[60] *Id.*
[61] *Id.* at 4.
[62] *Id.* at 7.
[63] *Id.*

9

recover under any reasonably conceivable set of circumstances.[64] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[65]

## IV. DISCUSSION

### A. CHOICE OF LAW

Hortonworks argues that Delaware law may apply because there is a false conflict between California and Delaware law regarding the parties' contentions. The Note and the VSA include California choice of law provisions. At this stage of the proceedings, the Court will use California law.

### B. PROMISSORY ESTOPPEL (COUNT II)

To plead promissory estoppel under California law, NVent must allege facts that demonstrate: (1) Hortonworks made a promise, clear and unambiguous in its terms; (2) NVent relied on that promise; (3) Nvent's reliance was reasonable and foreseeable; and (4) NVent was injured by its reliance.[66]

NVent's promissory estoppel argument is premised on the idea that there was no reason for Hortonworks to loan NVent $2.5 million but for Hortonworks' promise to provide $40 million in future work. NVent argues: "Simply put, if Hortonworks does not promise to provide $40 million in work, NVent does not take the loan."[67]

Hortonworks alleges that promissory estoppel is inapplicable because of the parties' integration clauses. NVent responds that parol evidence may be allowed in because Hortonworks' oral promise of $40 million in work is not part of the parties' agreements.

---

[64] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[65] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[66] *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1178, 201 Cal. Rptr. 3d 390, 416 (2016), *review denied* (July 27, 2016).
[67] Pl.'s Opp. at 9.

10

In *Aronowicz v. Nalley's Inc.*,[68] the California Court of Appeal upheld a trial court's verdict on a plaintiffs' promissory estoppel claim. In *Aronowicz*, defendant, a food distributor, was interested in procuring a line of deli meats sometime.[69] Plaintiffs, who had some experience in manufacturing deli meat, discussed working with defendant.[70] Plaintiffs incorporated Major Food Products, Inc. ("Major"), and discussions with defendant intensified.[71]

Defendant agreed to become Major's exclusive distributor as long as plaintiffs met certain performance indicators.[72] Defendant's agreement also stated: "[S]hould we determine your product line is not as represented or is not compatible with our operation we are free to terminate our agreement with 30 days."[73]

Amidst negotiations, plaintiffs leased plant space, procured products for manufacture, created advertising materials, and installed machinery.[74] Plaintiffs were fully operational and had all appropriate governmental health approvals within the requisite period.[75] Defendant's regional manager wrote a glowing review to defendant's home office.[76] Nonetheless, defendant back out on the deal.[77]

Plaintiffs sued, alleging, *inter alia,* promissory estoppel. A jury found for plaintiffs on their promissory estoppel claim. The Court of Appeal affirmed, holding:

> Defendant knew that [plaintiffs] were leaving their previous employment, investing and pledging their fortunes and securing the investments of others in substantial amounts to enable themselves to perform under terms of the letters exchanged between the parties. Defendant watched these efforts by plaintiffs,

---

[68] 106 Cal. Rptr. 424 (Cal. Ct. App. 1972).
[69] *Id.* at 34.
[70] *Id.*
[71] *Id.*
[72] *Id.* at 35.
[73] *Id.*
[74] *Id.* at 36.
[75] *Id.* at 36–37.
[76] *Id.* at 37.
[77] *Id.*

11

encouraged them, approved the results and went so far as to commence to secure orders for the products[.][78]

NVent alleges that Hortonworks' behavior shows that it enticed NVent into a contract. There were several agreements, including the Memorandum and the Note, whereby Hortonworks purportedly encouraged NVent's business, causing NVent to make certain corporate decisions and borrow money. NVent contends that Hortonworks invested in NVent for purposes of creating a big data servicing practice for Hortonworks' clients. Hortonworks allegedly enticed NVent to work *directly* for Hortonworks by promising $40 million in work. Moreover, NVent claims that Hortonworks lent NVent $2.5 million at a fixed, below market rate of 4%.

The Complaint does not present a situation where a neutral lender, like a bank, loaned NVent money. Rather, the Complaint shows a symbiotic relationship between the parties. This symbiotic relationship allows NVent to pursue its promissory estoppel claim. Given the allegations in the Complaint, and California law, the Court finds that NVent has pled a claim in Count II under which NVent could be entitled to recover under a reasonably conceivable set of circumstances.

C.   **MISREPRESENTATION (COUNT III)**

NVent alleges misrepresentation. NVent's misrepresentation claim, in its entirety, states:

89. Plaintiff hereby incorporates the averments of the preceding paragraphs as if fully set forth herein.

90. As set forth above, Hortonworks represented to NVent that it would acquire NVent and/or its assets.

91. At the times it made such representations to NVent, Hortonworks knew or should have known that it was not able to acquire an ownership interest in NVent due to, amongst other things, Hortonworks' interests in its initial and secondary public offerings, detrimental accounting ramifications if it went through with the

---

[78] *Id.* at 45.

acquisition, and opposition to the acquisition by internal senior management at Hortonworks.

92. Notwithstanding the existence of these impediments to any acquisition, instead of disclosing the full truth, Hortonworks obfuscated the true facts and misrepresented to NVent that the acquisition would take place in the near future.

93. As set forth above, Hortonworks also represented to NVent that it had $40 million in backlogged work for NVent, $6 to $8 million of which would be provided within the first year of their relationship.

94. At the times it made such misrepresentations to NVent, Hortonworks knew or should have known that it was not able to provide the level of work it represented it would provide to NVent.

95. Hortonworks made the above misrepresentations to NVent with the intent of inducing NVent to rely on the facts misrepresented by Hortonworks.

96. NVent did rely upon the misrepresentations of Hortonworks and acted in furtherance of that reliance to its detriment.

97. As a result of NVent's reliance upon the misrepresentations of Hortonworks, NVent did suffer and continues to suffer damages.[79]

NVent seems unsure as to what type of misrepresentation claim it intends to bring. In turn, Hortonworks moved to dismiss the claim under various theories. The parties' papers treat this argument as fraudulent misrepresentation, negligent misrepresentation, or intentional misrepresentation. Hortonworks treats "misrepresentation" as a fraud claim.[80] Further, Hortonworks argues that misrepresentation must be pled in accordance with Superior Court Civil Rule 9(b)'s heightened pleading requirement.[81] NVent's opposition cites to negligent and intentional misrepresentation cases.[82] At oral argument, NVent argued that the complaint could be either negligent or intentional misrepresentation.

---

[79] Pl.'s Compl. ¶¶ 89–97.
[80] Def.'s Mot. at 23–29.
[81] *See Universal Capital Mgmt., Inc. v. Micro World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012).
[82] Pl.'s Opp. at 22.

13

## 1. *Intentional/Fraudulent Misrepresentation*

Under California law, to establish a claim for fraudulent misrepresentation, the plaintiff must prove:

> (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and, (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.[83]

"Each element in a cause of action for fraud ... must be factually and specifically alleged."[84] In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written.[85]

NVent's argument is that the Hortonworks misrepresented it had $40 million worth of work for NVent. That misrepresentation induced NVent to sign the Note and incur the $2.5 million debt. Hortonworks argues that the contracts' integration clauses preclude considering the alleged misrepresentation. California's parol evidence rule, however, allows oral agreements and discussions to be admitted for the purposes of combating fraud.[86]

The Court has reviewed Count III of the Complaint. Count III is plead generally and not with particularity. As such, NVent has not adequately pled an intentional/fraudulent misrepresentation claim. NVent has not alleged who, what, when, where, and the basis for authority required under California law. The Court understands that "intent" is hard, at this stage

---

[83] *Perlas v. GMAC Mortg., LLC,* 113 Cal. Rptr. 3d 790, 794 (Cal. App. 2010).
[84] *Id.*
[85] *Id.* at 794–795.
[86] *See Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n,* 291 P.3d 316, 319 (Cal. 2013). *See also* CAL. CIV. PROC. § 1856(g) ("This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, . . ., or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud.").

of the case, to allege with particularity, but NVent should be able to assert who made the representations and under what corporate authority. To the extent this claim is a fraudulent misrepresentation claim, therefore, it must be dismissed.

### 2. Negligent Misrepresentation

To establish a claim for negligent misrepresentation, NVent must plead: (1) defendant made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce plaintiff to rely upon it; (5) plaintiff must have been unaware of the falsity of the representation, he must have acted in reliance upon the truth of the representation, and he must have been justified in relying upon the representation; and (6) as a result of his reliance upon the truth of the representation, plaintiff must have sustained damage.[87]

There is conflicting authority whether negligent misrepresentation claims must be pled with specificity. In *Small v. Fritz Companies, Inc.*, the Supreme Court of California held that "a complaint for negligent misrepresentation in a holder's action should be pled with the same specificity required in a holder's action for fraud. (We express no view on whether this pleading requirement would apply in other actions for negligent misrepresentation.)."[88] The United States District Court for the Central District of California has held that negligent misrepresentation under California law does not require specific, heightened pleading under Federal Rule of Civil Procedure 9(b).[89] The Court is not in a position to reconcile these two approaches to pleading negligent misrepresentation under California law. Delaware courts have held that negligent

---

[87] *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 900–901 (Cal. App. 2003).
[88] *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1266 (Cal. 2003).
[89] *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417–418 (C.D. Cal. 2012).

15

misrepresentation is subject to analysis under a Civil Rule 9(b) standard.[90] Accordingly, the Court will default to the pleading requirements for negligent misrepresentation under Delaware law. So, if NVent's claim is negligent misrepresentation, then it does need to be pled with the same specificity as a fraudulent misrepresentation.[91]

At this stage, the Court will allow NVent to clarify which misrepresentation theory it is pursuing.[92] If NVent is pursing intentional misrepresentation, then it must plead that with the requisite particularity. If NVent is pursuing negligent misrepresentation, then NVent should explicitly state that in its amended Complaint, plead with the requisite particularity, and explain why the Court would have jurisdiction over such a claim.

## D. LENDER LIABILITY (COUNT IV)

Finally, NVent alleges a lender liability claim. In total, NVent's lender liability claim states:

98. Plaintiff hereby incorporates the averments of the preceding paragraphs as if fully set forth herein.

99. As set forth in detail above, Hortonworks acted in bad faith in causing NVent to enter into the Note and then reneging on its agreements and promises.

100. Throughout the relevant time period, Hortonworks exercised control over NVent well outside and far greater than the typical lender-debtor relationship.

101. Throughout the relevant time period, Hortonworks actively participated in NVent beyond the domain of the usual lender.

---

[90] See, e.g., H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 146–147 (Del. Ch. 2003).
[91] The Court cautions NVent to review Van Lake v. Sorin CRM USA, Inc., C.A. No. 12C-04-036, 2013 WL 1087583, at *11–12 (Del. Super. Feb. 15, 2013) and Radius Servs., LLC v. Jack Corrozi Constr., Inc., C.A.No. 09L-02-046 (JTV), 2009 WL 3273509, at *2–3 (Del. Super. Sept. 30, 2009) before amending the Complaint on Count III.
[92] The Court, exercising its discretion, will allow NVent to amend Courts III and IV. Leave to amend is within the sound discretion of the Court and leave "shall be freely given when justice so requires." Super. Ct. Civ. R. 15(a); see also Mullen v. Alarmguard of Delmarva, Inc., 625 A.2d 258, 263 (Del. 1993). In the absence of substantial prejudice or legal sufficiency, the Court should exercise its discretion in favor of granting leave to amend. Mullen, 625 A.2d at 263.

102. Throughout the relevant time period, Hortonworks exercised control over various aspects of NVent's daily business operations, as well as over its long term management decisions.

103. Throughout the relevant time period, Hortonworks determined and controlled who NVent could employ, how that employee was trained, the work that employee did, and how NVent could bill its customers for such work.

104. Throughout the relevant time period, Hortonworks further so dominated and controlled NVent to the extent that it forced NVent to terminate Lowry, one of NVent's founders and managing members.

105. Throughout the relevant time period, Hortonworks so dominated and exerted control over NVent that it sought to control who NVent did business with and has accused NVent of being in breach of its obligations to Hortonworks if it performed any services for a Hortonworks' competitor despite the non-existence of a restrictive covenant.

106. Hortonworks was no mere arms-length lender to NVent.

107. Hortonworks exercised such domination and control over NVent that it had duties and obligations to NVent far greater than that of a traditional lender.

108. Hortonworks breached its duties to NVent by reneging on its promises and agreements and otherwise acting in bad faith, and by utilizing the Note to further control NVent in a manner that Hortonworks knew, or should have known, would greatly harm NVent.

109. NVent has been and continues to be harmed by Hortonworks' breach of its duties to NVent.

110. As a direct and proximate result of Hortonworks' tortious conduct, NVent has suffered damages, and will continue to suffer damages, in excess of $1,000,000.[93]

---

[93] Pl.'s Compl ¶¶ 98–110.

NVent's lender liability claim appears to be that Hortonworks involved itself NVent's business in such a way that Hortonworks was not a lender but, rather, owed some type of duty to NVent that, when breached, caused Hortonworks to be tortiously liable to NVent.[94]

The Court has taken time to review a number of California lender liability cases. Lender liability can arise under California law when the lender participates in the borrower's business activities "beyond the domain of the usual money lender."[95] Lender liability typically arises from financial institutions' alleged malfeasance and not a dispute between two commercial entities.

For example, in *Connor*, plaintiffs, homeowners on tracts of lands, suffered serious damage from cracking caused by ill-designed foundations.[96] Plaintiffs sought damages from the parties involved in the tract development, including Defendant Great Western, the homebuilder's lender.[97] The Supreme Court of California noted there was a question of whether Great Western was liable for its own negligence to the third-party plaintiffs.[98] The Court stated:

> Great Western voluntarily undertook business relationships with [developers] to develop the Weathersfield tract and to develop a market for the tract houses in which prospective buyers would be directed to Great Western for their financing. In undertaking these relationships, Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise. Its financing, which made the enterprise possible, took on ramifications beyond the domain of the usual money lender. It received not only interest on its construction loans, but also substantial fees for making them, a 20 percent capital gain for 'warehousing' the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere.[99]

---

[94] *See* Pl.'s Opp. at 31–32.
[95] *Connor v. Great Western Sav. & Loan Assn.*, 447 P.2d 609, 616 (Cal. 1968).
[96] *Id.* at 611.
[97] *Id.*
[98] *Id.* at 616.
[99] *Id.; see also Cardoni v. Wells Fargo Bank, N.A.*, C.A. D066351, 2015 WL 1413641 (Cal. Ct. App. Mar. 26, 2015)(asserted lender liability claim negligence/negligent misrepresentation); *1ˢᵗ Key Mgmt., Inc. v. Gateway Bus. Bank*, C.A. B233413, 2012 WL 2830372 (Cal. Ct. App. June 4, 2012)(asserted lender liability claim for negligence);

NVent has "technically" pled facts for a lender liability claim where the lender (Hortonworks) "actively participates" in financed enterprise (NVent) beyond domain of usual money lender, NVent fails to articulate what type of lender liability claim it is making.[100] As the Court reads Count IV, however, NVent appears to be making a "bad faith" fraud-type claim. If so, NVent has not plead fraud with the requisite particularity required under Civil Rule 9. If NVent is making a lender liability claim that Hortonworks negligently lent NVent money, then NVent needs to clarify Count IV.

At this stage, the Court will allow NVent to clarify which lender liability theory it is pursuing. If NVent is pursuing a lender liability "bad faith" or fraud claim, then it must plead that with the requisite particularity. If NVent is pursuing a lender liability negligence claim, then NVent should explicitly state that in its amended Complaint.

---

*Wagner v. Benson*, 101 Cal. App. 3d 27 (Cal. Ct. App. 1980)(asserted lender liability claim for negligence); *Skerlec v. Wells Fargo Bank, N.A.*, 18 Cal. App. 3d 1003 (Cal. Ct. App. 1971)(asserted lender liability claim for vicarious liability);

[100] As noted above, *supra* fn. 99, California lender liability claims do not stand alone as a claim for "lender liability." Instead, lender liability claims involve a lender and some type of cause of action other than breach of contract – *e.g.*, lender liability negligence, lender liability fraud, lender liability vicarious liability, etc. – and are characterized as the plaintiff's "lender liability claims."

19

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part.** The Motion as to Count II is **DENIED.** NVent has adequately alleged promissory estoppel. The Motion as to Counts III and IV is **GRANTED.** The Court will provide NVent leave to amend Counts III and IV so as to state a claim upon which relief can be granted. NVent has fifteen (15) days from the date of this Opinion to file any amended Complaint.

**IT IS SO ORDERED.**

Eric M. Davis, Judge